UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

AEP ENERGY SERVICES GAS HOLDING
COMPANY, *et al.*,

                        Plaintiffs,

            - against -

BANK OF AMERICA, N.A., *et ano.*,

                        Defendants.

------------------------------------x

05 Civ. 4248 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/11/08

On December 18, 2007, the Court issued an opinion determining the amount of damages that Bank of America ("BofA") is entitled to as a result of the Court's previous holding that it has the right to recover its security interest in the gas. In the opinion, the Court awarded BofA damages amounting to "$347,325,000 plus prejudgment interest, less the costs – to be determined – of withdrawing the gas."

Thus, before a final judgment is entered, the Court must determine what withdrawal costs, if any, BofA would have incurred had it removed the gas in 2004. The parties have submitted additional briefing on this point. AEP Energy Services Gas Holding Company ("AEP") claims a total of $18.70 million: $1.65 million to withdraw the gas from the facility; $1.65 million to transport it to the Houston Shipping Channel; and a

$15.4 million "capacity reservation fee". Each cost category will be discussed in turn.

## Withdrawal From the Facility

BofA contends that withdrawal of the gas from the Bammel facility would have been cost-free, because mechanical withdrawal compression is not required to pump gas out of the Bammel facility (as it is at many other facilities). BofA provides evidence that the withdrawal fee has been listed as zero in almost all of the facility's storage contracts during the past eight years, and that in only 3 out of 74 contracts was there any fee listed. In those contracts, the fees were 1.5¢, 2¢, and 3¢ per MMBtu respectively.

AEP, on the other hand, contests the idea that natural pressure alleviates any withdrawal cost. AEP alleges that such pressure is in fact manmade, and exists only because the facility has chosen to maintain a large volume of cushion gas and to continuously compress working gas as it is injected. AEP further claims that the contracts cited by BofA did not include withdrawal fees because the withdrawal costs were built into the overall storage contract prices. AEP suggests the Court use AEP's contract with CenterPoint – the facility's largest, unrelated commercial storage customer – as a model for determining how this cost should be calculated. CenterPoint contracts for a storage and withdrawal service that allows CenterPoint to withdraw all of its gas from the Bammel facility within a short period of time. AEP argues this is similar to the

situation which would have occurred with BofA, so the CenterPoint fees are similar to the costs BofA would have incurred.

CenterPoint pays a withdrawal fee of 3¢ per MMBtu. AEP suggests that the Court use this as a measure of what BofA's withdrawal cost would have been. BofA responds that the CenterPoint Contract is only one contract – a contract that was entered after the facility was sold and nearly three years after the conversion. BofA alleges it therefore can have no bearing on what it would have cost BofA to remove the gas.

The Court does not find it plausible that there would have been no cost associated with removal of the gas from the facility. The Court further finds that the CenterPoint Contract's rate of 3¢ per MMBtu is a reasonable measure of the cost of removal in this case. Therefore, the judgment shall be reduced by 3¢ per MMBtu, or a total of $1.65 million, to account for the cost BofA would have incurred to withdraw the gas from the Bammel facility in 2004.

## Transportation Cost

AEP alleges that a transportation fee should also be deducted to account for the cost BofA would have incurred in transporting the gas to the Houston Shipping Channel ("HSC"). This is based on the fact that the Court valued the gas at the HSC index price. Thus, AEP argues that BofA should be charged an additional 3¢ per MMBtu, which is HPL's currently offered transportation rate to the HSC.

The Court does not find this was a necessary cost for BofA. The HSC price was only used by the Court because it was an index agreed to by the parties for valuation of the gas. This does not mean that BofA would literally have needed to transport the gas to the HSC as part of the cost of withdrawing the gas. Under the Operative Agreements, a subsidiary of Enron named LeaseCo was to deliver the gas "at or in the vicinity of the Storage Facility." An expert for BofA testified that BofA could have sold the gas at the Bammel facility, and AEP has not refuted this with any concrete evidence. Because there was no need to physically transport the gas to the HSC, it is not appropriate to reduce the judgment to account for doing so.

## Capacity Reservation Fee

AEP claims that $15.4 million must be deducted from the judgment for a "capacity reservation fee." According to AEP, this fee reflects "HPL's lost opportunity cost from setting aside the requisite gas storage and withdrawal capacity required by the agreement, as well as maintenance and operation costs." The fee is further defined in the CenterPoint Contract as "a monthly fee for the reservation of storage capacity to store the Working Gas set forth in the Storage Confirmation."

The proposed capacity reservation fee does not have anything to do with withdrawal of gas. Further, BofA was not withdrawing the gas pursuant to a contractual arrangement in which BofA requested to

reserve storage capacity. The Court will not reduce the judgment by this amount.

## Conclusion

In sum, the damages award shall be reduced by $1.65 million to account for withdrawal costs. A judgment shall be entered for $345,675,000 plus prejudgment interest. The parties shall settle an appropriate judgment.

SO ORDERED

Dated: New York, New York
August 11, 2008

*Thomas P. Griesa*
Thomas P. Griesa
U.S.D.J.